UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAND JON ALEXANDER,<br><br>                                    Plaintiff,<br><br>v.<br><br>RALPH DIAZ,<br><br>                                    Defendant. | Case No.:  20cv100-CAB-KSC<br><br>**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS [Doc. No. 6]** |

On January 14, 2020, Plaintiff Anand Jon Alexander filed a Complaint for Damages, setting forth six causes of action:  (1) Eighth Amendment claim (under 42 U.S.C. §1983) for failure to protect inmate from harm; (2) Supervisory liability under 42 U.S.C. §1983; (3) Eighth Amendment claim (under 42 U.S.C. §1983) for deliberate indifference to medical condition; (4) Violation of California Civil Code §52.1 (Bane Act); (5) Negligence; and (6) Violation of California Government Code §845.6 (failure to summon or provide immediate necessary care).  On March 30, 2020, Defendants Diaz, Pollard, Paramo and Ramirez filed a motion to dismiss the complaint for failure to state a claim.  [Doc. No. 6.]  On April 24, 2020, Plaintiff filed an opposition.  [Doc. No. 8.]  On May 7, 2020, Defendants filed a reply to the opposition.  [Doc. No. 9.]  For the reasons set forth below, the motion to dismiss the complaint is **GRANTED WITH LEAVE TO AMEND.**

## ALLEGATIONS OF COMPLAINT

Plaintiff is an inmate incarcerated by the California Department of Corrections and Rehabilitation (CDCR) at Richard J. Donovan Correctional Facility (Donovan) in San Diego County. (Compl., ECF 1 at ¶¶ 17 – 19.) Plaintiff was initially classified as a Level III inmate at the California Correctional Institution, but that classification was reduced to a Level II after Plaintiff arrived at Donovan. (*Id*. at ¶¶ 17, 18.) Plaintiff was initially housed on a sensitive needs yard (D yard) at Donovan, but was transferred to the general population and housed on E yard on May 30, 2019. (*Id*. at ¶ 19.) But prior to this transfer, Plaintiff was assaulted on the sensitive needs yard (D Yard) on May 18, 2019. (*Id*. at ¶ 23.)

The May 18, 2019 assault was "a racially motivated hate crime." (*Id*.) The attack caused "grave bodily injuries, including multiple stab wounds to [Plaintiff's] face and right eye (requiring over a dozen stitches at the upper orbital), five facial fractures, a lower orbital floor blowout, sinus and nasal fractures, a deviated septum, a 50% abrasion of the right cornea, long term impairment of his vision and respiration, serious nerve damage, PTSD, psychological collateral damage, [and] ongoing therapy, work, and education restriction." (*Id*.) Plaintiff was a "'first tier' resident," waiting by the telephones to call his mother on May 18, 2019. (*Id*. at ¶ 24.) A "second tier" Level IV inmate named Dominic Rizzo, CDCR No. V04967, "somehow managed to/or was allowed to sneak up on [Plaintiff] from behind and stab Plaintiff multiple times in the face. (*Id*.) Plaintiff blacked out and was kicked and beaten. (*Id*.) Rizzo should not have been in the day room where the alleged incident happened because first- and second-tier inmates should not be allowed to come into physical contact with each other in the interests of "inmate control, officer safety and the protection of both." (*Id*.) A second inmate, Justin Simons CDCR #AK5535, followed up this attack with death threats against Plaintiff on May 25. (*Id*. at ¶ 25.) Inmate Simons was "Rizzo's accomplice," and both inmates are white supremacists. (*Id*.) Plaintiff told an unnamed correctional officer about the alleged threat. (*Id*. at ¶ 26.) The unnamed correctional officer told Plaintiff that

his options were to "(1) go to the hole and nothing happens to Rizzo or Simons; (2) lose and get sent to a Level III yard elsewhere; or (3) win and go to a Level II yard." (*Id*.)

On May 29, 2019, Simons was banging on Plaintiff's cell door, displaying a shank, and calling Plaintiff "a motherfucker," and said "I'm going to get you, there is a green light." Plaintiff reported the threat, but the pleadings do not say to whom this report was made. (*Id*.) Both Simmons's and Rizzo's cells were searched, but the pleadings are silent as to who searched them. (Id.) Plaintiff was locked in his cell "for his protection." (*Id.*) Plaintiff was not provided with a "required" written record being locked within his cell. (Id.)

The Complaint further alleges that "CDCR and the Defendants failed to protect [Plaintiff] by knowingly allowing a known violent Level IV assailant to be housed with, and have open access to, [Plaintiff], a Level II low risk inmate with no history of violence classified as a sensitive needs inmate." (*Id*. at ¶ 27.) Plaintiff and Rizzo should have never been placed on the "same yard, much less the same floor, at the same time." (*Id.*) "The staff at RJ Donovan have attempted to cover up the incident in several ways, going so far as to try and incriminate [Plaintiff], the only actual victim." (*Id.* at ¶ 28.) Defendant Ramirez prepared a false Rules Violation Report stating that the assault "was no more than 'fighting' (i.e. mutual Combat) and reported no serious injuries with respect to Plaintiff." (*Id*. at ¶ 28(c).)

Finally, the Complaint alleges "[t]he institution" failed or refused to transfer Plaintiff to a lower-level yard "because they told them it was [to] be contingent on the outcome of the RVR hearing (based on the false report of 'fighting')." (*Id.* at ¶ 29.) A hearing was held on May 30, 2019, where the Rules Violation Report was dismissed "at the last moment." (*Id*.) Plaintiff was then transferred out to lower level II (E Yard) within the same hour. (*Id*.) "This clearly indicates an attempt to avoid having the reporting officer answer difficult questions under penalty of perjury and to keep the incident under wraps." (Id.) It took more than seven months of administrative appeals to have inmates Rizzo and Simmons placed on Plaintiff's "enemy list." (*Id.* at ¶ 30.)

1   Plaintiff claims serious medical injuries from the alleged assault such as double

2   vision, nerve damage, and a deviated septum. (*Id.* at ¶ 31.) "The institution" delayed

3   Plaintiff's request for a second opinion on surgery such that the delay made it impossible

4   for him to have the surgery because of the time lapse. (*Id.*) "The institution" has not

5   cleared him to have dental surgery. (*Id.*) He was put on heavy duty despite medical orders

6   limiting him to complete rest or light duty. (*Id.*) "However, as a result of administrative

7   appeals," Plaintiff's assignment to "heavy duty" was excused. (*Id.*)

8   LEGAL STANDARD

9   Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to

10  state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the

11  sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that

12  is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For

13  purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in

14  the complaint as true and construe[s] the pleadings in the light most favorable to the non-

15  moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th

16  Cir. 2008).

17  Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a

18  party make "a short and plain statement of the claim showing that the pleader is entitled

19  to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

20  elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

21  (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted

22  inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d

23  1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

24  ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a

25  cause of action, but must contain sufficient allegations of underlying facts to give fair

26  notice and to enable the opposing party to defend itself effectively.").  "Determining

27  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

28

4

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

DISCUSSION

A. Eighth Amendment Claim for Deliberate Indifference to Plaintiff's Safety.

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment requires, however, that prison officials ensure that inmates receive adequate food, clothing, shelter, and medical care. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (citations omitted).

A plaintiff who challenges conditions of confinement must essentially make two showings to demonstrate a violation of the Eighth Amendment. *Hearns*, 413 F.3d at 1042. First, the plaintiff must "make an objective showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Id*. (*quoting Wilson*, 501 U.S. at 298). Second, the plaintiff must make a subjective showing that the prison officials in issue acted "with a sufficiently culpable state of mind." *Id*. A plaintiff must show that the prison officials in issue had actual knowledge of plaintiff's basic human needs and deliberately refused to meet those needs. *Id*. Finally, a plaintiff must also demonstrate that the prison officials in issue caused the deprivation about which he complains. *See Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Hearns*, 413 F.3d at 1040 (9th Cir.2005). To allege an Eighth Amendment violation for failure to protect, the prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must

5

show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. Cnty. of Washoe*, Nev., 290 F.3d 1175, 1187–88 (9th Cir.2002); *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir.2001) (per curiam). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *See Farmer,* 511 U.S. at 842. Prison officials may, however, avoid liability by presenting evidence that they lacked knowledge of the risk. *See id*. at 844; *Gibson*, 290 F.3d at 1187–88.

Where, like here, a plaintiff seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation requires a very individualized approach which accounts for the duties, discretion, and means of each defendant. *Sweet v. Lucine*, 2002 WL 31855365, at *4 (N.D. Cal. 2002), aff'd, 76 Fed. Appx. 133 (9th Cir. 2003) (*citing Leer*, 844 F.2d at 633). The prisoner must set forth specific facts as to each individual defendant's deliberate indifference. *Id*. (*citing Leer*, 844 F.2d at 633-34). There must be an affirmative link between a defendant's actions and the claimed deprivation. *See Rizzo v. Goode*, 423 U.S. 362 (1976).

Here, Plaintiff fails to allege that any Defendant knew of a specific risk to Plaintiff's safety. Plaintiff alleges that Defendants failed to protect him because he was a Level II inmate housed on the bottom tier, and Rizzo was a Level IV inmate housed on the top tier, and policy forbade top-tier inmates from coming into contact with bottom-tier inmates.  (*See* Complaint at ¶27.)  However, these allegations do not rise to a claim for failure to protect. Prison settings are "always potentially dangerous," and "mere suspicion that an attack will occur" is insufficient to show that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Berg v. Kincheloe*, 794 F.2d 457, 459–61 (9th Cir.1986).

Plaintiff does not allege that any of the named Defendants had any specific knowledge that Rizzo or Simmons posed a threat of harm to Plaintiff. Rather, he merely alleges that he reported the alleged death threat by Simmons to an unnamed staff member "not sued herein." (Complaint at ¶26.) However, there is no allegation this alleged report was ever conveyed to the named Defendants. Because Plaintiff has failed to allege deliberate indifference by the named Defendants[1], he has failed to state an Eighth Amendment claim for failure to protect. *See Farmer*, 511 U.S. at 834. Accordingly, Defendants' motion to dismiss Plaintiff's first claim for relief is **GRANTED**.

B. Claim for Supervisor Liability Against Diaz, Pollard and Paramo.

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See 42 U.S.C. § 1983*; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, personally participated in the deprivation of a right secured by federal law. *See Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). A defendant personally participates in the deprivation "if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017) (*quoting Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) ). Vague and conclusory allegations of personal involvement in an alleged deprivation do not suffice. *Id.*

_____

[1] In his opposition, Plaintiff argues that "[t]hrough discovery, Plaintiff will be able to gather facts from which a reasonable jury will learn why a Level IV inmate like Rizzo was housed with Level II inmates on an SNY [Sensitive Needs Yard]. From that evidence, it could conclude that Defendants [footnote omitted] were aware of the risk posed to SNY inmates from inmates like Rizzo, including knowledge that SNY inmates were segregated for their own protection." [Doc. No. 8 at 14-15.] However, Plaintiff must satisfy the [Federal Rules of Civil Procedure] Rule 8 pleading requirements "*before* the discovery stage, not after it." *Mujica v. AirScan Inc.,* 771 F.3d 580, 593 & fn. 7 (9th Cir. 2014)(emphasis in original).

20cv100-CAB-KSC

1   "Supervisory personnel are generally not liable under § 1983 for the actions of their
2   employees under a theory of respondeat superior." *Id*. Thus, when a plaintiff names a
3   supervisor as a defendant, "the causal link between him or her and the claimed
4   constitutional violation must be specifically alleged." *Id*. (citations omitted). A plaintiff
5   can satisfy this requirement by alleging that the supervisor "participated in or directed the
6   violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880
7   F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir.
8   2011).

9   Here, the Complaint identifies the policy governing the housing of inmates, but
10  provides no allegations as to how Defendants Diaz, Pollard, or Paramo[2] personally failed
11  to follow the policy, or personally knew that their subordinates were not following the
12  policy.  There are also no allegations in the Complaint that these Defendants knew that
13  the policy itself resulted in the alleged constitutional violation. Because Plaintiff has not
14  alleged that these Defendants personally engaged in or knew of the alleged violations[3],
15  Plaintiff fails to state a claim for supervisor liability as to Defendants Diaz, Pollard or
16  Paramo.  Accordingly, Defendants' motion to dismiss Plaintiff's second claim for relief is
17  **GRANTED.**

18  C. Eighth Amendment Claim for Deliberate Indifference to a Medical Condition.

19  To maintain an Eighth Amendment claim based on prison medical treatment under 42
20  U.S.C. § 1983, an inmate must show "deliberate indifference to serious medical needs."
21  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S.

---

[2] Plaintiff does allege that "on information and belief, it is highly probable that Defendant Paramo was either present at the classification meeting when it was decided, via committee override discretion, that Rizzo would be housed on a Level III yard, as opposed to the appropriate Level IV yard, or Defendant Paramo was notified of the decision, and failed to reverse it, in effect approving of it."  (Complaint, ¶6.c.i.)  While this may show *respondeat superior*, it does not show knowing approval of a constitutional violation.  *Atayde*, 255 F.Supp.3d at 988.

[3] Again, while Plaintiff may hope that "[d]iscovery will adequately prove [Defendants'] housing and classification decision (or failure to correct them) were constitutionally inadequate," [Doc. No. 8 at 18], more is required now to fulfill Plaintiff's Rule 8 pleading requirement.  *Mujica*, 771 F.3d at 593, fn. 7.

97, 104 (1976)). "[T]here is a two-pronged test for evaluating a claim for deliberate indifference to a serious medical need:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.["]

*Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096). A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1970). The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id*. "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060. Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care (without more), nor a difference of opinion over proper medical treatment, is sufficient to constitute an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105–06; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1984).

1    Here, there are no allegations in the Complaint showing that Defendants Diaz, Pollard,

2    Paramo or Ramirez had knowledge of Plaintiff's medical condition or need for medical

3    attention.  Instead, Plaintiff merely alleges that "the institution dragged out Mr.

4    Alexander's request for a second opinion on surgery to such a point that, the delay made

5    it impossible to go ahead with the recommended surgeries due to the time lapse."

6    (Complaint, ¶31.)  Alleging the "institution" denied Plaintiff medical care is insufficient

7    to state an Eighth Amendment claim against the individual Defendants.  Accordingly,

8    Defendants' motion to dismiss Plaintiff's third claim for relief is **GRANTED**.

9    D. Claim Under California Civil Code Section 52.1(B).

10    California Civil Code § 52.1, also known as the Bane Act, holds individuals liable for

11    violating or interfering with the rights of others by "threat, intimidation, or coercion."

12    "Although analogous to § 1983, [the Bane Act] is not tantamount to a § 1983 violation,

13    requiring more than evidence of a violation of rights." *Davis v. City of San Jose*, 69 F.

14    Supp. 3d 1001, 1007 (N.D. Cal. 2014); *See Venegas v. Cty. of L.A.*, 32 Cal. 4th 820, 843

15    (2004) ("Civil Code section 52.1 ... [is] limited to threats, intimidation, or coercion that

16    interferes with a constitutional or statutory right."). Thus, to prove a Bane Act claim, a

17    plaintiff must demonstrate that the interference was accompanied by an act of coercion.

18    *Muhammad v. Garrett*, 66 F. Supp. 3d 1287, 1295 (E.D. Cal. 2014).

19    Here, there is nothing in the Complaint showing that any named Defendant made any

20    threat toward Plaintiff.  In fact, the Complaint is devoid of any allegations of personal

21    interaction between any Defendant and Plaintiff.  Moreover, there are no allegations that

22    Defendants took any violent act against Plaintiff, or threatened him with violence.

23    Because Plaintiff fails to allege such threats, he fails to state a claim under California

24    Civil Code §52.1.  Accordingly, Defendants' motion to dismiss the fourth claim for relief

25    is **GRANTED**.

26    E.  Claim for Negligence.

27    A claim for negligence requires duty, breach, causation, and damages.  *Hayes v. Cnty.*

28    *of San Diego*, 305 P.3d 252, 255 (Cal. 2013).  Here, Plaintiff alleges various duties

20cv100-CAB-KSC

regarding the housing of inmates, but does not allege how each named Defendant breached those duties.  Plaintiff's argument that "they [Defendants] breached those duties by allowing the very harm they are intended to forestall to befall Plaintiff" [Doc. No. 8 at 25] is insufficient.  The fact that a harm occurred and that duties exist does not show how the duties were breached and whether those breaches caused the harm.  Because Plaintiff fails to provide specific allegations as to breach and causation, Plaintiff fails to state a claim for negligence.  Accordingly, Defendants' motion to dismiss the fifth claim for relief is **GRANTED**.

F.  Claim Under California Government Code Section 845.6.

California Government Code § 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but ... a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care....

See Cal. Gov't Code § 845.6.

California courts have narrowly interpreted § 845.6 to create limited liability only when: (1) the public employee 'knows or has reason to know of the need,' (2) of 'immediate medical care,' and (3) 'fails to take reasonable action to summon such medical care.' " *Castaneda v. Dep't of Corrs. & Rehab.*, 212 Cal.App.4th 1051 (2013). Here, Plaintiff makes no allegations that Defendants, or any other correctional staff member, knew that Plaintiff was attacked on May 19, 2018, and that they failed or refused to summon medical care for Plaintiff.  Similarly, there are no allegations that any Defendant knew Plaintiff later needed surgery or dental work, but refused to arrange for those services.  Because Plaintiff fails to allege that any Defendant knew Plaintiff was attacked and failed to summon medical care, Plaintiff fails to state a claim under California Government Code §845.6.  Accordingly, Defendants' motion to dismiss the sixth claim for relief is **GRANTED**.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Complaint is **GRANTED WITH LEAVE TO AMEND**.  Plaintiff shall have until **June 30, 2020** to file a First Amended Complaint.

**IT IS SO ORDERED**.

Dated:  May 29, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge

20cv100-CAB-KSC