UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANAND JON ALEXANDER,

Plaintiff,

v.

PATRICK COVELLO et al.,

Defendants.

Case No.:  20cv100-CAB-KSC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

[Doc. No. 47]

Anand Jon Alexander, a prisoner currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), and who is represented by counsel in this civil action, alleges various state prison officials violated his Eighth Amendment rights and were negligent when they failed to protect him from an attack by another inmate.  Plaintiff previously voluntarily dismissed several defendants, including any correctional officers who were on duty at the time of the incident, and the remaining defendants now move for summary judgment.  The motion has been fully briefed, and the Court deems it suitable for submission without oral argument.  For the following reasons, the motion is granted.

## I.    Factual Background

In November 2008, Alexander was found guilty of sexual assault in a Los Angeles County court and was subsequently sentenced to 14 years plus 45 years to life in prison. [Doc. No. 11 at ¶¶ 18-19.]  In 2014, Alexander was transferred to RJD as a Level III inmate

and placed in "D" yard, which is a sensitive needs yard ("SNY"). [*Id.* at ¶ 23.] On May 18, 2019, while he was still in the Level III "D" SNY yard, Alexander was assaulted by another inmate named Dominic Rizzo, who had had arrived at RJD on November 30, 2018. [Doc. No. 51 at 10; Doc. No. 47-2 at ¶ 8.] According to Alexander, "while waiting to use the phone in his housing unit on D Yard, he felt sharp stabbing pains striking his head and experienced excruciating pain that blinded him and caused a lack of consciousness." [Doc. No. 51 at 10.] Alexander suffered serious injuries in the attack, including:

> multiple stab wounds to his face and right eye (requiring over a dozen stitches), five facial fractures, a lower orbital floor blowout, sinus and nasal fractures, a deviated septum, a 50% abrasion of the right cornea, long term impairment of his vision and respiration, serious nerve damage, seizures, PTSD, psychological collateral damage, ongoing therapy, work, and education restriction.

[*Id.*] Shortly after the incident, Alexander signed a "compatibility chrono" stating that the incident was a misunderstanding and that he could remain housed in the same unit as Rizzo without further incident. [Doc. No. 47-7 at 6.] Alexander has no recollection of signing this document. [Doc. No. 51-1 at ¶ 14.] Two days later, on May 20, 2019, Alexander signed another statement acknowledging that in an interview that day with Sergeant N. Scharr he had stated that he had no enemy concerns with Rizzo and wished to remain in "D" yard. [Doc. No. 47-8 at 5.] Although the FAC includes numerous other allegations concerning the aftermath of the incident, none of these allegations are relevant to the claims against the remaining defendants, whose involvement and alleged liability stems solely from their roles, if any, in the decision to place Rizzo in the same yard as Alexander.

## II.   Procedural History

Plaintiff, through counsel, filed the original complaint on January 14, 2020. The original complaint named four defendants: (1) Ralph Diaz, alleged to be Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) Marcus Pollard, alleged to have been the warden at RJD at all relevant times; (3) Daniel Paramo, also alleged to have been the warden at RJD at all relevant times; and (4) E. Ramirez, alleged

to have been on duty in "D" yard at RJD at the time of the incident.  The original complaint also named Does 1-70, who included (a) CDCR lieutenants and sergeants on duty at the time of the incident, (b) CDCR correctional officers and other employees on duty "at relevant times," (c) individuals responsible for classification and housing of inmates and made the decision to house Plaintiff and Rizzo together, and (d) individuals responsible for providing medical care, including mental health treatment, to inmates at RJD.  [Doc. No. 1 at ¶ 6.]  The original complaint asserted six claims for relief: (1) failure to protect Alexander from harm, against all defendants, under 42 U.S.C. § 1983; (2) supervisory liability, against Diaz, Pollard, "Parajo" (presumably meant to be Paramo), and the Doe lieutenants and sergeants on duty at the time of the incident, under 42 U.S.C. § 1983; (3) deliberate indifference to medical condition, against all defendants, under 42 U.S.C. § 1983; (4) violation of California Civil Code § 52.1, against all defendants; (5) negligence, against all defendants; and (6) failure to summon or provide immediately necessary medical care, against all defendants, under California Government Code § 845.6.

On May 29, 2020, the Court granted the defendants' motion to dismiss, noting that Plaintiff had failed to allege that any defendant knew of a specific risk to Plaintiff's safety and therefore did not allege facts supporting a claim that the defendants were deliberately indifferent to threats to Plaintiff's safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). [Doc. No. 10 at 6-7.]  The order also held that the original complaint did not state a claim for supervisory liability because it did not allege that any of the supervisor defendants personally engaged in or knew of the alleged violations of Plaintiff's rights. [Doc. No. 10 at 8.]  Ultimately, the Court dismissed all claims and gave Plaintiff leave to amend.

On June 30, 2020, Plaintiff file the operative first amended complaint ("FAC").  The FAC expressly abandoned any claims against Diaz and Pollard, as well as the claims for deliberate indifference to a medical condition, violation of California Civil Code § 52.1, and violation of California Government Code § 845.6.  [Doc. No. 11 at 1, n.1; Doc. No. 13.]  Thus, the FAC names only Paramo and Ramirez, along with the various categories of

3

Doe defendants listed in the original complaint.  Further, the FAC asserts only three claims: (1) failure to protect Alexander from harm, against all defendants, under 42 U.S.C. § 1983; (2) supervisory liability, against Paramo and the Doe lieutenants and sergeants on duty at the time of the incident, under 42 U.S.C. § 1983; and (3) negligence, against all defendants.

On July 14, 2020, Ramirez filed a motion to dismiss the claims against him.  [Doc. No. 12.]  On July 28, 2020, Plaintiff filed a notice of voluntary dismissal of his claims against Ramirez, rendering the motion to dismiss moot.  [Doc. Nos. 13, 18.]  On February 1, 2021, Plaintiff filed an unopposed motion to: (1) dismiss Paramo and substitute in his place Patrick Covello, the acting warden of RJD at the time of the incident; (2) add Karl E. Greither, Corey Cross, and Lindsey Gervasoni, who were members of the classification committee that authorized Rizzo's transfer to RJD, as defendants; and (3) add Gabriel Menchaca, who audited and authorized Rizzo's transfer to RJD as a Level III inmate suitable for housing in a Sensitive Needs Yard, as a defendant.  [Doc. No. 28.]  The Court granted this motion on February 4, 2021.  [Doc. No. 29.]

In sum, consistent with the foregoing procedural history, this case now consists of three claims: (1) failure to protect Alexander from harm under 42 U.S.C. § 1983; (2) supervisory liability under 42 U.S.C. § 1983; and (3) negligence.  The first and third claims are asserted against five named defendants, consisting of the acting warden, the three officials who recommended Rizzo as qualified for Level III SNY housing, and the official who audited that recommendation and authorized Rizzo's transfer to "D" yard at RJD.  The second claim is against Acting Warden Covello alone.  The five named defendants now move for summary judgment on all three claims.

## III.   Legal Standard

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)).  If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial.  *Id.* at 324.

To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations,"  *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citations omitted), and "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]."  *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323).  "The party opposing summary judgment may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable judge or jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.").

## IV.   Discussion

The details of Rizzo's attack on Alexander, the extent of Alexander's injuries, and actions taken by prison officials after the incident are largely irrelevant to Alexander's claims against the remaining defendants.   Although the FAC contains allegations concerning how corrections officers and prison officials handled the aftermath of the incident, none of the remaining defendants had any involvement in those actions.   Rather, Alexander's case now stems solely from the decision to house Rizzo in the same yard as Alexander.   Thus, the only question before the Court is whether any of the remaining defendants' involvement in the decision to place Rizzo in the same yard as Alexander could allow a jury to hold them liable.

### A. Failure to Protect Under the Eighth Amendment

"'[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"   *Farmer*, 511 U.S. at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).   However, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Id.* at 837.   "Deliberate indifference is a high legal standard."   *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

"The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference."   *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).   The first prong of this test is objective, and "[f]or a claim (like the one here) based on a failure to prevent harm, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see also Lemire v. Cal. Dep't of Corr. & Rehab.,* 726 F.3d 1062, 1075 (9th Cir. 2013). "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt." *Lemire*, 726 F.3d at 1075-76.

The second prong of this test, meanwhile, is subjective, and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Farmer*, 511 U.S. at 837. "'Deliberate indifference entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hearns*, 413 F.3d at 1040 (quoting *Farmer*, 511 U.S. at 835) (internal alterations omitted)). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [the Supreme Court's] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838; *see also Toguchi*, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.") (internal brackets and citation omitted).

Here, the remaining defendants fall into three categories: (1) the three members of the classification committee that recommended that Rizzo could be transferred from High Desert State Prison, where he was a Level IV inmate, to the Level III "D" SNY yard at RJD; (2) the official that audited the classification committee's recommendation and approved Rizzo's transfer to RJD's "D" SNY yard; and (3) the acting warden at the time of the incident. Notwithstanding Defendants' varying levels of involvement in the decision to transfer Rizzo to the same yard as Alexander, the record is equally devoid of any evidence that any of them had any knowledge that Rizzo posed a threat to Alexander (or any other inmate in "D" yard), or more generally, that Alexander faced a substantial risk of serious harm merely by being housed in "D" yard. Lacking such evidence, Alexander

bases his case on (1) generalized threats he allegedly faced from inmates affiliated with white supremacist gangs, and (2) an argument that Rizzo's behavioral history in prison did not justify placing him in the Level III "D" SNY yard where Alexander was also imprisoned.  To this end, Plaintiff's opposition brief provides evidence and argues that Alexander, who is of Indian descent, was at risk of harm from inmates affiliated with white supremacist gangs, such as the Aryan Brotherhood, and that Rizzo had been affiliated with these gangs in the past.  This evidence, however, does not demonstrate that any of the Defendants were deliberately indifferent to Alexander's (or any other inmates') risk of harm either from being housed in the same yard as Rizzo, or from being housed in "D" yard generally.

Indeed, none of the Defendants even knew who Alexander was before the attack by Rizzo, let alone that Alexander was housed at in "D" yard at RJD.  [Doc. No. 47-2 (Covello Declaration); Doc. No. 47-3 (Menchaca Declaration at ¶ 15); Doc. No. 47-4 (Grether Declaration at ¶ 14); Doc. No. 47-5 (Cross Declaration at ¶ 14); Doc. No. 47-6 (Gervasoni Declaration at ¶ 14).]  Alexander was not mentioned in the files considered by the Classification Committee and Menchaca when deciding that Rizzo qualified to move to "D" yard at RJD.  [Doc. No. 47-3 (Menchaca Declaration at ¶ 10); Doc. No. 47-4 (Grether Declaration at ¶ 10); Doc. No. 47-5 (Cross Declaration at ¶ 10); Doc. No. 47-6 (Gervasoni Declaration at ¶ 10).]  Moreover, acting warden Covello is the only defendant who even worked at RJD when the incident occurred, and Alexander admits that "there is no specific nexis [sic] with COVELLO to any decisions made at RJD before the incident."  [Doc. No. 51 at 30.]

In sum, even assuming that Alexander was vulnerable to an assault from inmates affiliated with white-supremacist gangs, none of the Defendants knew of Alexander or of this vulnerability, meaning that they could not have been deliberately indifferent to a risk of harm to Alexander as a result of the placement of Rizzo in "D" yard at RJD.  Likewise, the evidence does not support Alexander's attempt to characterize the decision to transfer Rizzo from a Level IV unit to the Level III "D" yard at RJD as deliberately indifferent to

the safety of the residents of "D" yard generally.  The Classification Committee reviewed Rizzo's file, including his past incidents, and decided that his recent behavior qualified him for placement in a Level III unit.  The opposition does not provide any evidence of fighting or other disciplinary problems with Rizzo for more than three years before he was transferred to RJD, or in the over five months he was housed on "D" yard with Alexander before the incident.  [Doc. No. 51 at 13-14.][1]  Nor does the opposition present any evidence of any connection between Rizzo and Alexander before the incident, let alone that any Defendant was aware of such a connection.  Thus, the opposition does not provide any evidence of either facts from which the inference could be drawn that placing Rizzo in "D" yard would create a substantial risk of serious harm to Alexander or any other inmate in that yard, or that any Defendant in fact drew such an inference and disregarded it.  *Cf. Toguchi*, 391 F.3d at 1058 (holding that because the defendant did not believe that treatment using a certain drug "presented a serious risk of harm to [the defendant], her conduct cannot constitute deliberate indifference.").  Accordingly, Defendants are entitled to summary judgment on the claim for failure to prevent harm.

### B. Supervisory Liability Claim

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have

---

[1] The opposition brief includes a chronology related to Rizzo that includes an incident described as occurring on September 26, 2018.  [Doc. No. 51 at 14.]  Alexander's counsel subsequently filed a notice of errata stating that the date of this incident was incorrect and that the incident actually occurred on August 16, 2005.  [Doc. No. 53.]

known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (internal quotation marks, brackets, and citation omitted).  There is no respondeat superior liability under § 1983; therefore a supervisor like Warden Covello may be held liable for the constitutional violations of his subordinates only if he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, there is no evidence that Covello had any knowledge that Rizzo posed a substantial risk of serious harm to Alexander or anyone else on "D" yard, and Alexander concedes that "there is no specific nexis [sic] with COVELLO to any decisions made at RJD before the incident." [Doc. No. 51 at 30.]  There is no dispute that Covello did not know Alexander before the incident and that he did not participate or direct any decisions concerning placement of Rizzo in "D" yard.  Accordingly, Covello is entitled to summary judgment on this claim.

### C. Negligence Claim

"Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).  "The most important of the considerations in establishing duty is foreseeability. As a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 245 (2008).

Here, there is no evidence of any connection between Alexander and Rizzo, let alone one that would support a finding that it was foreseeable that Rizzo would attack Alexander if housed in the same yard or otherwise given the opportunity.  Indeed, there is no evidence that any of the defendants even knew of Alexander or that he and Rizzo would be housed

in the same yard.  Nor is there evidence demonstrating that it was foreseeable that Rizzo would be a danger to "D" yard inmates generally.  Therefore, none of the defendants breached any duty to Alexander based on their involvement, if any, in the decisions resulting in Rizzo being transferred to "D" yard at RJD.  Accordingly, summary judgment is warranted on this claim as well.

## V.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**.  The Clerk of Court shall enter **JUDGMENT** in favor of Defendants and **CLOSE** this case.

It is **SO ORDERED**.

Dated:  February 22, 2022

Hon. Cathy Ann Bencivengo
United States District Judge